**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard Angelo ZUCCO, Defendant–
Appellant.**

No. 94–41197
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1995.

Lewis Dickson, Houston, TX, for Appellant.

Paul E. Naman, Asst. U.S. Atty., Mike Bradford, U.S. Atty., Keith Fredrick Giblin, Asst. U.S. Atty., Beaumont, TX, for Appellee.

Before POLITZ, Chief Judge, and DAVIS and EMILIO M. GARZA, Circuit Judges.

POLITZ, Chief Judge:

Richard Angelo Zucco appeals the district court's denial of his motion to suppress the evidence discovered during the warrantless search of his recreational vehicle. Finding no error, we affirm.

### Background

In April 1994 Officers David Froman and Jerry LaChance of the Beaumont Police Department stopped a recreational vehicle traveling erratically down the interstate. Froman asked the driver, later identified as Zucco, to exit the vehicle and show his driver's license. When Froman explained the reason for the stop and asked for an explanation, Zucco responded by saying that the heavy wind made control of the vehicle difficult.

Froman wrote a warning citation for a violation of Tex.Rev.Civ.Stat.Ann. art. 6701d § 60(a),[1] asked Zucco various questions about the vehicle, his home, and his stay in Houston, and gave Zucco's driver's license to LaChance to run a National Crime Information Center (NCIC) check. After handing the

---

1. Tex.Rev.Civ.Stat.Ann. art. 6701d § 60(a) provides in pertinent part:
 The driver of a vehicle shall drive as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

citation to Zucco, Froman asked LaChance to prepare a consent to search form because Zucco's answers to his several questions had aroused his suspicions. LaChance did as requested.

Froman sought and received Zucco's oral consent for the search of the vehicle. LaChance then explained to Zucco the consent to search form, including his right to refuse. Zucco again consented, signed the form, and initialed the statements that he understood his right to refuse consent and that he had not been coerced.

Froman began searching the vehicle and found a package of cocaine in a kitchen cabinet. He placed Zucco under arrest and took him to the Jefferson County Jail. LaChance drove the vehicle to their narcotics office where a trained drug dog surveyed the vehicle. After the dog alerted at a spot inside the vehicle, Froman and LaChance removed a wall panel and discovered a large cache of cocaine.

Zucco's motion to suppress evidence of the cocaine was denied after a hearing. Zucco entered a conditional plea, was sentenced to 180 months confinement, and timely appealed the denial of his motion to suppress.

### Analysis

Zucco claims that the seizure was unconstitutional because it: (1) was pretextual, (2) exceeded the scope of the supporting circumstances, and (3) constituted a *de facto* arrest. He also maintains that the search was unconstitutional because his consent was not freely and voluntarily given, the search exceeded the reach of his consent, and no warrant was obtained.

■ A routine traffic stop is analyzed under the guidelines established in *Terry v.* *Ohio*,[2] even though the stop may be premised on more than a reasonable, articulable suspicion.[3] Under this analysis we must determine the reasonableness of the search or seizure by asking "whether the officer's action was justified at its inception, *and* whether it was reasonably related in scope to the circumstances which justified the interference in the first place."[4]

■ We review the district court's findings of fact for clear error and its conclusions of law *de novo*, viewing the evidence in the light most favorable to the government, unless inconsistent with the trial court's findings or found to be clearly erroneous after considering the evidence as a whole.[5]

■ The evidence reflects that Froman and LaChance stopped Zucco after watching him veer on to the shoulder of the interstate at least three times. This driving arguably was a violation of Tex.Rev.Civ.Stat.Ann. art. 6701d § 60(a). The stop was justified and the first prong of the *Terry* analysis is satisfied.[6]

■ Zucco challenges the scope of the seizure. After the initial stop Froman questioned Zucco while writing a warning citation. LaChance simultaneously ran the NCIC check and was awaiting its result when the search occurred. Recently we stated that "[m]ere questioning . . . is neither a search nor a seizure,"[7] and we also held that "in a valid traffic stop, an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation."[8] The officers' actions were not inappropriate.

---

**2.** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**3.** *United States v. Shabazz*, 993 F.2d 431 (5th Cir.1993).

**4.** *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878 (emphasis added); *see also Shabazz*.

**5.** *Shabazz*.

**6.** Zucco argues that the stop was pretextual and thus, unreasonable. Sitting *en banc* we foreclos-

ed this argument: "[S]o long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir.1987) (en banc).

**7.** *Shabazz*, 993 F.2d at 436.

**8.** *Id.* at 437.

In *Shabazz*, a case strikingly similar to the instant action,[9] we held that "[b]ecause the officers were still waiting for the computer check at the time that they received consent to search the car, the detention to that point continued to be supported by the facts that justified its initiation."[10] The district court found that Zucco gave consent to search before or during the time of the NCIC check. The seizure did not exceed the scope of the circumstances warranting the stop.[11]

 Zucco also maintains that the seizure amounted to a *de facto* arrest. "We recognize that a detention may be of excessively long duration even though the officers have not completed and continue to pursue investigation of the matters justifying its initiation.... A prolonged investigative detention may be tantamount to a *de facto* arrest, a more intrusive custodial state which must be based upon probable cause rather than mere reasonable suspicion."[12] Zucco's detention did not amount to a *de facto* arrest because the time elapsing between the initial stop and the consent, approximately nine minutes, was reasonable, and he consented to the search prior to the satisfaction of the officers' unquestioned interest in running a check on his license.

 Zucco challenges the validity of his consent to search. To be valid such consent must be free and voluntary, elements which the government must prove by a pre-ponderance of the evidence. Voluntariness is a finding of fact which we will reverse only if found clearly erroneous. The appellate review standard is more deferentially applied when the evidence includes critical credibility assessments.[13]

 In evaluating voluntariness of consent we consider the defendant's custodial status, education and intelligence, extent of cooperation, awareness of his right to refuse consent, and belief that no incriminating evidence would be found, together with the presence or absence of coercive police tactics.[14] Applying these factors, the district court found Zucco's consent to be voluntary. We perceive no clearly erroneous finding of fact and no error of law in this holding.

 Finally, Zucco maintains that the search conducted at the police station, which included dismantling a wall of the vehicle, was unreasonable because the government did not obtain a warrant and because his consent to search did not include the interior of the walls. Both of these contentions lack merit. The automobile exception permits the authorities to search a vehicle at the police station without a warrant provided the search is supported by probable cause.[15] If supported by probable cause, every part of a

---

9. Officers Froman and LaChance, whom we have characterized as ever-vigilant, were the officers in *Shabazz* and in *United States v. Kelley*, 981 F.2d 1464 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1993), who, after observing suspects violate traffic laws on Interstate 10 in Beaumont, Texas, searched their vehicles after obtaining consent.

10. *Shabazz*, 993 F.2d at 437. Zucco relies on *United States v. McSwain*, 29 F.3d 558 (10th Cir.1994), for the proposition that once he offered an understandable excuse for veering onto the shoulder, Froman and LaChance were obligated to release him. In *McSwain*, the authorities stopped the defendant to investigate the validity of the car's temporary registration sticker. The Tenth Circuit held that once the officer was assured that the sticker was valid, the object of the stop had been achieved and further detention was unreasonable. Zucco overlooks the factual distinction between *McSwain* and his case. Unlike *McSwain*, after Froman and LaChance stopped Zucco they continued to believe that Zucco had violated a traffic law of the State of Texas. Because Zucco had an explanation for his failure to maintain his vehicle in a single lane, this did not obviate the officers' possessive reasonable belief.

11. *Shabazz*. Zucco would attach significance to the fact that he had signed the warning citation prior to completion of the NCIC check and prior to his consent to search. In this case, it is clear that the seizure did not exceed the scope of the circumstances giving rise to it. The officers were warranted in continuing the initial stop for the reasonable period required to receive the NCIC response.

12. *Id.* at 437.

13. *Id.*

14. *Id.* All of the factors are relevant; no single factor is dispositive.

15. *United States v. McSween*, 53 F.3d 684 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 199, 133 L.Ed.2d 133 (1995).

vehicle which may conceal the object of the search may be searched.[16]

> The scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of a magistrate is waived; the search otherwise is as the magistrate could authorize.[17]

In this case the government had probable cause to search the vehicle and was authorized to examine behind the wall after the drug dog alerted at that location.

AFFIRMED.

---

**16.** *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *McSween.*

**17.** *Ross,* 456 U.S. at 823, 102 S.Ct. at 2172.