DENNIS, Circuit Judge,
dissenting:
In denying the motion to suppress evidence, the district court committed three legal errors: (1) It erred in deciding that the defendant, Kevin Andrew Pack, II (“Pack”), lacked standing to challenge his prolonged detention by the police officer because Pack was merely a guest passenger in the vehicle; (2) Because of its error on standing, the district court also erred in failing to decide whether the officer had a reasonable articulable basis to suspect Pack of a crime that warranted further investigation and justified Pack’s continued *363 detention; and (3) The district court erred in concluding that, in any event, Pack could not move to suppress the evidence derived from his prolonged detention because he did not prove a “nexus” between his detention and the evidence. Therefore, the district court’s judgment, denying the motion to suppress, should be vacated, and the case should be remanded for further determinations, including: (a) “Reasonable suspicion”: a determination of whether the officer had a reasonable articulable basis to suspect Pack of a crime that justified his prolonged detention; and, if necessary, (b) “Fruit of the poisonous tree”: If the officer lacked such reasonable suspicion, whether the evidence was “fruit” of the unlawful detention.
The majority errs by affirming rather than vacating the district court’s judgment, and by failing to remand the case for a determination of whether there was “reasonable suspicion” for the prolonged detention and, if necessary, whether the evidence was fruit of the unlawful detention. Additionally, the majority errs by usurping the district court’s functions by assessing witness credibility, finding facts, and inferring reasonable suspicion. It also errs in misinterpreting and misapplying circuit precedents, including United States v. Brigham, 382 F.3d 500 (5th Cir.2004) (en banc), and United States v. Dortch, 199 F.3d 193 (5th Cir.1999), which, if correctly followed, would require a different result even on the facts improperly found by the majority.
For these reasons, I respectfully dissent.
I.
Each of the district court’s foregoing errors of law is discussed below. They originated in the magistrate judge’s Modified Report and Recommendation and were adopted without change by the district court.
A.
First, the district court concluded that Pack did not have standing to challenge the constitutionality of the vehicle’s search because he was merely a guest passenger in the vehicle in which the marijuana and pistol were later found. As Pack states in his motion to suppress, he contests not only the search of his luggage in the vehicle’s trunk, but also the “stop and detention” of his person, which he argues led to the search of the vehicle and the discovery of the challenged evidence. The Supreme Court, in Brendlin v. California, held that “[w]hen a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment ... [and] a passenger [therein] is seized as well and so may challenge the constitutionality of the stop.” 551 U.S. 249, 251, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). The Court stated that this conclusion “comports with” the view that: “If either the stopping of the car, the length of the passenger’s detention thereafter, or the passenger’s removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit.” Id. at 258-59, 127 S.Ct. 2400 (quoting 6 Wayne R. LaFave, Search and Seizure § 11.3(e), at 194-95 & n. 277 (4th ed. 2004 & Supp.2007)). Therefore, Pack had standing to object to the length of his detention as a constitutional violation and to have the evidence found in the vehicle suppressed if it was a fruit of that invalid detention.
The district court apparently read Brendlin as holding that a passenger only has standing to challenge the constitutionality of the traffic stop itself and lacks standing to contest the prolonged detention of his person. However, this is plainly *364 contradicted by the above-quoted text from Brendlin, that a passenger may challenge “the length of the passenger’s detention” following a stop. 551 U.S. at 259, 127 S.Ct. 2400. Thus, under Brendlin, Pack has standing to contend that his prolonged detention after the stop was unlawful because it was not based on an articulable reasonable suspicion of a crime and to have suppressed any evidence that is the fruit of that unconstitutional detention. Therefore, the district court’s erroneous determination of the scope of Pack’s standing should have been rejected and, as its judgment stemmed from this error, its ruling should have been vacated.
B.
Second, because the district court mistakenly decided that Pack did not have standing to challenge the length of his detention after the stop, the district court erred by failing to determine whether the officer justifiably prolonged Pack’s detention. “The stopping of a vehicle and detention of its occupants constitutes a 'seizure’ under the Fourth Amendment.” Brigham, 382 F.3d at 506. “This court, following the Supreme Court, has treated routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation, as Terry stops.” Id. (citing Berkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); Pennsylvania v. Mimms, 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam); Dortch, 199 F.3d at 198). “Pursuant to Terry, the legality of police investigatory stops is tested in two parts. Courts first examine whether the officer’s action was justified at its inception.” Id. (citing Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). “Under the second prong of the Terry test, the question before the court is whether [the officer’s] actions after he legitimately stopped the [vehicle] were reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop.” Id. at 507.
Here, Pack did not challenge the initial stop of the vehicle for speeding. However, it is undisputed that Pack’s detention lasted far longer than was necessary for the officer to issue the driver a warning for speeding, his only basis for the stop. Thus, because, as shown above, Pack had standing to challenge his prolonged detention as unlawful, it is essential to a correct disposition of this case for the district court to determine whether the detention was “reasonably related ... to dispelling [the officer’s] reasonable suspicion developed during the stop.” Brigham, 382 F.3d at 507. See also id. (“[A] detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts emerges.” (citing Dortch, 199 F.3d at 200; United States v. Machuca-Barrera, 261 F.3d 425, 434 (5th Cir.2001))).
The Supreme Court has said repeatedly that to make a “reasonable suspicion” determination, a trial court must consider the “ ‘totality of the circumstances’ ” to see whether the detaining officer has a “ ‘particularized and objective basis’ ” for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). This review enables “officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person.’ ” Id. (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690).
*365 As a result, the Supreme Court has made clear that the initial determination of “reasonable suspicion” to support an officer’s actions must be made by the “resident judge[],” viz., the motion court of first instance, and that an appellate court reviewing the resident judge’s ruling must give “ ‘due weight’ ” to that court’s “factual inferences.” Arvizu, 534 U.S. at 273-74, 122 S.Ct. 744 (quoting Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). See Murray v. United States, 487 U.S. 533, 543, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (“[I]t is the function of the District Court rather than the Court of Appeals to determine the facts.... ”); United States v. Cole, 444 F.3d 688, 688 (5th Cir.2006) (“Defendant Demetric Cole appeals the denial of his motion to suppress drugs found in his vehicle following a traffic stop. Because we are unable to resolve the legality of the stop without additional fact finding, we vacate the district court’s order denying Cole’s motion to suppress and remand for further proceedings.”). Thus, the district court’s failure to reach the “reasonable suspicion” issue vel non justifies vacating and remanding for further proceedings.
Yet the majority disregards Arvizu, Ornelas, and Cole, and makes its own ab initio determination of “reasonable suspicion.” Accordingly, it usurps the “resident judge’s” role as the initial arbiter of that primary question. The majority asserts it can do so in this case because the district court implicitly found, and the defendant conceded, facts supporting its inference of reasonable suspicion. But the record simply does not support the majority’s assertion or inference. The district court did not determine “reasonable suspicion” or make any factual findings pertinent to such a determination. The magistrate judge’s report adopted by the district court merely summarizes the officer’s testimony without analyzing it for credibility and reliability, or assessing how it impacted the totality of circumstances. Further, the majority’s notion that Pack’s attorney conceded facts that support the officer’s reasonable suspicion is refuted by both the attorney’s recorded oral argument and her briefs. During oral argument she stated repeatedly that no court had ever addressed the issue of reasonable suspicion. Therefore there could be no factual findings or credibility determinations that either support the Government’s argument or contradict Pack’s motion to suppress. Likewise, in her brief, while Pack’s attorney acknowledged the testimony of the arresting officer, she never agreed that the officer’s testimony was credible, reliable, or sufficient to establish “reasonable suspicion.” Thus, she did not concede the factual finding that would be essential for an appellate court to adopt the allegations of the Government as true and use them to determine whether there was reasonable suspicion. Accordingly, the majority’s substitution of itself for the district court in making the initial determination of “reasonable suspicion” is not supported by the law or the record.[1]
*366 C.
Third, the magistrate judge and district court erroneously concluded that, even if Pack’s constitutional rights were violated by the prolongation of his detention, his motion to suppress must be denied because Pack did not prove that the evidence was a fruit of that violation. The fruit of the poisonous tree doctrine operates to exclude evidence derived from a constitutional violation unless the prosecution proves by a preponderance of evidence in the trial court that it was derived independently from that violation.
“The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search.... ” Murray, 487 U.S. at 536, 108 S.Ct. 2529 (citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914)). “Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes ‘so attenuated as to dissipate the taint.’ ” Id. at 536-37, 108 S.Ct. 2529 (quoting Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939)). “Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the constitutional violation.” Dortch, 199 F.3d at 200-01 (citing United States v. Cherry, 759 F.2d 1196, 1210-11 (5th Cir.1985)).
The record clearly reflects that the evidence was derived from the officer’s prolonged detention of Pack. The officer detained Pack, the driver, and the vehicle because he suspected Pack of transporting illegal drugs and he called for a canine unit to confirm or allay his suspicion. Throughout Pack’s detention the officer’s only basis for suspicion of drug trafficking was Pack’s travel on an interstate highway, Pack’s apparent nervousness, and the inconsistency of Pack’s itinerary story with that of the driver. Pack’s prolonged detention enabled the drug dog to alert on the vehicle’s trunk and the officer to discover the evidence in the baggage inside the luggage compartment. Thus, based on the current record, the evidence was derived from Pack’s prolonged detention and should have been suppressed if the officer lacked reasonable suspicion to detain Pack for that protracted period.
Rewriting the record, the majority contends that the magistrate judge and district court concluded the evidence was not a fruit of Pack’s prolonged detention because the officer also had reasonable suspicion to hold the driver, and thereby the car, and thus the marijuana would have been discovered regardless of whether or not Pack was released. Majority Op. 348-49. However, the driver’s conduct was mentioned only once in the magistrate judge’s analysis, in reference to her speeding, which the magistrate judge concluded and Pack conceded justified the initial stop, but not the continued detention. Instead, the magistrate judge continually returned to the claim that “Pack exhibited *367 signs of nervousness” as the Government’s justification for the officer’s “suspicions].” Therefore, it was clearly Pack’s behavior that the Government alleged and the lower court thought was being used to justify the continued seizure of Pack, the driver and the car.
As a result, the magistrate judge and district court legally erred in concluding that the evidence could not have been suppressed, even if Pack’s prolonged detention was unlawful, on the theory that Pack had to prove a nexus between his unlawful detention and the evidence. That theory is invalid. If Pack’s prolonged detention was unlawful, it is evident that on the present record the evidence was a fruit of that violation and therefore had to be suppressed. In such a case, the burden would be on the government, not Pack, to prove a break in the chain of events linking the violation and the evidence or that the evidence was or could have been obtained independently of the unlawful detention. See Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Because the government failed to argue, and the record fails to show, that there is any basis for inferring that the evidence was or could have been obtained independently of Pack’s prolonged detention, there was no valid basis for the district court to conclude that the marijuana was not a fruit of the unlawful detention.[2]
II.
In addition to the errors discussed above, the majority opinion, in my view, also misreads and misapplies several of our circuit precedents. As the majority recognizes, we held in Dortch, 199 F.3d 193, that the bare fact that motorists were traveling on an interstate highway, combined with their “extreme nervousness and inconsistent stories, [is] not enough to create reasonable suspicion of drug trafficking.” Majority Op. 352. Yet these are the precise and exclusive facts from which the majority finds “reasonable suspicion” in the instant case for the first time from a cold record on appeal. Tacitly conceding its inability to distinguish Dortch from the present case, the majority tries to circumvent it by arguing that Dortch was overruled by Brigham, 382 F.3d 500. But this argument lacks persuasive merit.
Rather than overruling Dortch, Brigham distinguishes and builds upon Dortch, as has been observed by a host of other circuit precedents citing to and applying Dortch following Brigham. See United States v. Cavitt, 550 F.3d 430, 436 (5th Cir.2008) (citing as binding precedent Dortch’s analysis that the facts in Dortch do not establish reasonable suspicion); United States v. Khanalizadeh, 493 F.3d 479, 483 (5th Cir.2007) (same); United States v. Jenson, 462 F.3d 399, 404-05 & n. 5 (5th Cir.2006) (holding that the government lacked reasonable suspicion based on the facts of that case in part because “[w]e have previously found detentions unreasonable based on the totality of the circumstances, when the driver exhibited signs of nervousness” (citing Dortch, 199 F.3d at 199-200)). In fact, Brigham positively cites Dortch at least eight times, Brigham, 382 F.3d at 506, 507, 508 & n. 7, 509 & n. 8, 510, 511, including in relation to Dortch’s analysis that its facts do not establish reasonable suspicion, id. at 510 (criticizing the dissent for extending Dortch beyond its *368 “facts and reasoning” on which the majority relied).
Seeming to recognize that its argument is undermined by circuit precedent, the majority also argues that all of the cited cases’ discussions of Dortch must be dicta because Dortch and Brigham's holdings are clearly irreconcilable. However, Dortch and Brigham can easily be read together. In Brigham, unlike in Dortch and the instant case, one of the detained suspects produced a fake I.D. This provided much of the officer’s basis for reasonable suspicion, justifying the prolonged detention and eventual search. Brigham, 382 F.3d at 505, 509 (“Once Conklin learned that Franklin’s I.D. was likely false, Conklin acted reasonably, with further questioning.”). By contrast, Dortch mirrors the facts alleged in the instant case, which the Dortch majority concluded did not establish reasonable suspicion. See 199 F.3d at 196. Therefore, Dortch and Brigham can be reconciled by the obvious truth that concealing one’s identity from a police officer by producing a forged document can tip the totality of circumstances toward reasonable suspicion, where an individual’s mere inconsistencies and nervousness could not.
CONCLUSION
The district court’s decision should be vacated because it legally erred in: (1) concluding that Pack lacked standing to challenge the prolonged detention of his person; (2) failing to determine whether there was a reasonable articulable basis to suspect Pack of possession of illicit drugs; and (3) concluding that the evidence, which was derived from Pack’s prolonged detention, could not be the fruit of that detention. Accordingly, we should have remanded the case to the district court and directed it to determine, in light of the correct legal principles, in the first instance: (1) the credible facts surrounding Pack’s seizure; (2) whether those facts established reasonable suspicion; and (3) if there was not reasonable suspicion, whether the evidence found in the luggage appearing to belong to Pack was a fruit of that unlawful seizure. Therefore, I respectfully dissent.

. The cases the majority cites in its footnote 5 for the proposition that this court can determine in the first instance whether there was reasonable suspicion do not actually support such a rule. In United States v. Waldrop, 404 F.3d 365, 367 (5th Cir.2005), United States v. Ibarra-Sanchez, 199 F.3d 753, 758 (5th Cir. 1999), United States v. Kye Soo Lee, 962 F.2d 430, 434-35 & n. 16 (5th Cir.1992), and United States v. Basey, 816 F.2d 980, 986-87 (5th Cir.1987), unlike in the instant case, before this court passed upon the issue the district court ruled upon the merits of the motion to suppress, making relevant factual findings. See also United States v. Kye Soo Lee, 898 F.2d 1034, 1039-40 (5th Cir.1990) (another appeal of the same Kye Soo Lee case detailing more of the lower court’s findings). Blackwell v. Barton, 34 F.3d 298, 301, 305 (5th Cir.1994), was a 42 U.S.C. § 1983 action, in which our *366 standard of review was governed by the summary judgment standard under the Federal Rules of Civil Procedure, not the rules of criminal procedure at issue in the present case. Moreover, even under the majority's logic an appellate court should only act as the initial arbiter of reasonable suspicion if the facts are undisputed. That is not true here. As shown above, the defendant has not conceded and the district court did not find that the arresting officer's recitation of the facts was credible.

. For example, the Government did not argue or show that either Pack or the owner-driver of the vehicle consented to the officer’s search of the vehicle or the luggage in its trunk; nor is there any contention that the challenged evidence is admissible under the inevitable discovery or independent source doctrines. See Murray, 487 U.S. at 537, 108 S.Ct. 2529; Nix, 467 U.S. at 443, 104 S.Ct. 2501; Cherry, 759 F.2d at 1205-06.