BENAVIDES, Circuit Judge,
dissenting:
I respectfully dissent. I would affirm the district court’s suppression ruling: the stop was justified because Raney violated the law by driving on the wrong side of the road. Uncontested record evidence indicates that at the time of the stop, Raney was driving on the lefthand side of the road, which is a violation of Texas Transportation Code § 545.051(a) except in limited circumstances. None of those exceptions apply here. That said, in light of the Government’s improper arguments at trial, as discussed by the majority, I believe this panel should reach the appellant’s argument that the Government’s improper arguments constitute reversible error.
The majority reverses the district court’s suppression ruling, holding that the district court erred in finding probable cause because Raney was driving on the wrong side of the road at the time of the stop. In particular, the majority takes umbrage with the district court’s conclusion that driving on the wrong side of the road is a per se traffic violation. I do not understand this to be the district court’s holding.[1] Moreover, even if the district *397 court misstated the law, we should still consider independently whether Raney violated § 545.051(a). Remand would be appropriate if there were contested factual issues, like whether Raney actually drove on the lefthand side of the street.[2] But here, there is no dispute as to the facts relevant to § 545.051(a), only as whether Raney’s undisputed conduct constituted an offense. Whether particular conduct constitutes an offense is a question of law we review de novo.[3] There is no reason this panel should not apply the correct law to the undisputed facts in the record before us.
Raney’s conduct violated § 545.051(a), and none of the statutory exceptions apply. That statute provides:
An operator on a roadway of sufficient width shall drive on the right half of the roadway, unless:
(1) the operator is passing another vehicle; (2) an obstruction necessitates moving the vehicle left of the center of the roadway and the operator yields the right-of-way to a vehicle that:
(A) is moving in the proper direction on the unobstructed portion of the roadway; and
(B) is an immediate hazard ... ,[4]
It is undisputed that Raney was driving on the left half of Chiswick when the officers effected the stop. Thus, the relevant question is whether any of the statutory exceptions apply.
Neither the exception for passing another vehicle nor the exception for avoiding an obstruction applies here. As to the first of these, Raney’s driving on the left side of the road cannot properly be termed “passing.” The Texas Transportation Code explains: “ ‘Pass’ or ‘passing’ used in reference to a vehicle means to overtake and proceed past another vehicle moving in the same direction as the passing vehi *398 cle or to attempt that maneuver.”[5] Thus, this statutory definition of “passing” is plainly limited to moving vehicles. Further, the definition is further limited to passing “another vehicle.” Driving on the wrong side of the road in attempt to bypass a line of cars stopped in traffic is not passing “another moving vehicle,” and this exception does not apply by the statute’s plain language.
The second statutory exception, avoidance of an obstruction, is similarly inapplicable. I disagree with the majority that the line of cars waiting to enter the gas station “constitutes an obstruction.” Uncontested record evidence indicates that this was a garden-variety traffic jam.[6] It was not, for instance, a situation where a stalled car blocked the righthand lane. I decline to join the majority in holding that an ordinary traffic jam is an “obstruction” that would make driving on the wrong side of the road legal under Texas law for two reasons. First, I cannot imagine that the Code’s drafters intended to allow anyone who does not care to wait in traffic to drive with impunity on the wrong side of the street. Second, even if a traffic jam is an “obstruction” under the Code, the majority neglects a crucial portion of the statute: driving on the left side is only permitted when “an obstruction necessitates moving the vehicle left of the center of the roadway.”[7] The Code also does not define “necessitate,” but I cannot think that an ordinary traffic jam is the kind of obstruction that necessitates driving on the wrong side of the road. To interpret the statute otherwise would invite chaos.
The majority argues that the Government failed to meet its burden to negate the applicability of the statutory exceptions (exceptions which were neither pointed out nor claimed by the appellee in the court below). It also appears to suggest that we cannot affirm because the district court did not make a finding as to whether either statutory exception applies. I disagree on both points. As discussed above, whether particular conduct constitutes an offense is a pure question of law that we review de novo. The relevant facts are undisputed: the lane in which Raney was driving was blocked by a traffic jam. Cars were standing still; some were waiting to turn into a gas station, while others, like Raney, were waiting to exit the subdivision. Rather than wait in line with the rest of the cars, Raney chose to drive on the wrong side of the street. The sole question is whether this conduct was legal under § 545.051(a). I fail to see what other evidence or factfindings we would need to answer this question.
Finally, I disagree with the majority that the Government “essentially conced[ed]” that Raney did not violate § 545.051(a). To be sure, the Government did not directly address Raney’s argument on appeal that he did not violate § 545.051(a) because he was “passing” or avoiding an obstruction. But this does not relieve the appellant of his burden to raise arguments explaining why the district court’s judgment was in error.[8] The Gov *399 ernment’s poor treatment of the issue does not render the district court’s judgment incorrect, and Raney does not win his argument against affirmance by default. We must ask whether he is correct that he did not violate § 545.051(a). His argument to that effect is unpersuasive. He merely quotes the statute and asserts, in conclusory fashion, that he was authorized to “pass other vehicles” or “pass an obstruction.” He provides no authority, from the statute or otherwise, to indicate that his conduct in fact constitutes “passing” or “avoiding an obstruction.” And as I have explained, the far better view is that his driving on the wrong side of the street was neither of these things.
I turn briefly to the subject of the Government’s use of various lines of improper argument. Like my colleagues in the majority, I am deeply troubled by the Government’s persistence in making such improper arguments despite our repeated admonishments. The majority does not, however, reach the question of whether such improper arguments constitute reversible error. In my view, the panel should reach this question. In any event, I dissent from the majority’s decision to overturn the district court’s denial on the suppression motion and its judgment ordering an acquittal.

. After finding that Raney violated the Texas Transportation Code's prohibition on driving on the left side of the road, the district court did comment that "Mr. Raney committed a
traffic violation by driving on the wrong side of the road, period.” However, in context, I do not believe the district court used the term *397 “period” to mean “per se.” Consider the full text of the court's comment:
I am a little bit on the fence, frankly ... about where Mr. Raney was and why — and whether or not it would be a fair inference that he was aware that the officers were directing traffic, but I don't believe I need to get there. Mr. Raney committed a traffic violation by driving on the wrong side of the street, period.
The government had presented three alternative grounds for probable cause: driving on the wrong side of the road, reckless driving, and disobeying a police officer. Essential to both of these latter offenses was exactly where Raney’s vehicle was located and whether he was aware that the officers were directing traffic. But the district court held that it need not make these factfindings because "Mr. Raney committed a traffic violation by driving on the wrong side of the street, period.” Thus, I understand the district court’s use of "period” here to mean "end of discussion,” not that driving on the wrong side of the street is a per se traffic offense.

. United States v. Cole, 444 F.3d 688, 690 (5th Cir.2006) (remanding a motion to suppress because "factual findings” — specifically, whether an intersection had a crosswalk and where an approaching vehicle had stopped— were needed to determine whether the defendant violated state law).

. See United States v. Williams, 602 F.3d 313, 315 (5th Cir.2010) ("The sufficiency challenge requires determining what conduct constitutes an offense under § 111 (a)(1). The court reviews questions of statutory interpretation de novo.”) (citing United States v. Kay, 359 F.3d 738, 742 (5th Cir.2004)).

. Tex. Transp. Code § 545.051(a). The statute provides for two other exceptions, both of which are plainly irrelevant in this case. One exception is where "the operator is on a roadway divided into three marked lanes for traffic,” and the other is where "the operator is on a roadway restricted to one-way traffic.” Because undisputed record evidence establishes that Chiswick is a two-lane, two-way street we need discuss these exceptions no further.

. Id. § 545.001(1) (emphasis added).

. Indeed, Raney did not present evidence at the hearing that, at the time of the stop, he was passing another vehicle or attempting to avoid an obstruction in the roadway. Indeed, he did not even argue to the district court that either the "passing” or the "avoiding an obstruction” exception to § 545.051(a) applies here.

. Id. § 545.051(a)(2) (emphasis added).

. Fed. R.App. P. 28(a)(9)(A) ("The appellant’s brief must contain ... [an] argument, which must contain ... appellant’s contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.”); cf. Int’l Women’s Day March Planning Comm. v. City of San Antonio, 619 F.3d 346, 369 n. 31 (5th Cir.2010) *399 ("While San. Antonio does bear the burden of showing narrow tailoring, this does not relieve the plaintiffs of their obligation as appellants to raise arguments explaining why the district court’s grant of summary judgment to San Antonio was erroneous.” (internal citation omitted)).